******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

HILARIO'S TRUCK CENTER, LLC *v.* LAURA
RINALDI ET AL.
(AC 39966)

Sheldon, Keller and Prescott, Js.

*Syllabus*

The plaintiff towing company sought to recover damages from N Co., an
insurance company, and its insured, R, arising out of vehicle recovery
and storage services that the plaintiff performed following a motor
vehicle accident involving R's vehicle. The plaintiff alleged that N Co.
breached an implied contract to pay the cost of the expenses that the
plaintiff had incurred and that N Co. was liable to it for money damages
because it was a third-party beneficiary of R's insurance contract with
N Co. The trial court granted N Co.'s motion to dismiss, and rendered
judgment thereon, from which the plaintiff appealed to this court. *Held*
that the trial court properly dismissed the plaintiff's action as to N Co.,
that court having properly determined that the plaintiff, as a third-party
claimant, lacked standing to maintain a direct action against N Co.: the
plaintiff failed to identify any express language in the contract from
which it could be determined that N Co. and R intended to create a
direct obligation to the plaintiff specifically and the contract, which did
not list the plaintiff as an insured or refer to the plaintiff, was devoid of
any reference to entities like the plaintiff that might provide automobile
recovery, towing and storage service to R, and certain language in the
policy that obligated N Co. to pay for property damage as a result of
an accident arising out of the use of R's automobile did not evince an
intent to create a direct obligation by N Co. to any third person or entity,
known or unknown, who suffered property damage as a result of R's
use of her vehicle or who expended funds on R's behalf to mitigate
property damage suffered by others, as that assertion confounded the
distinction between those persons or entities that might foreseeably
benefit from R's contractual receipt of liability coverage with those
persons or entities to whom both R and N Co. specifically intended that
N Co. would assume a direct obligation; moreover, denying the plaintiff
third-party beneficiary status did not undermine sound public policy,
and the plaintiff's out-of-state authority for such proposition was inappo-
site and unpersuasive, as those cases involved actions brought by or
against the named insured under the insurance contracts at issue and
did not involve the question of whether a towing company should be
deemed a third-party beneficiary to an insurance contract between the
automobile owner and an insurance company.

Argued April 10—officially released July 24, 2018

*Procedural History*

Action to recover damages for, inter alia, breach of
contract, and for other relief, brought to the Superior
Court in the judicial district of Danbury, where the
court, *Truglia, J.*, granted the motion to dismiss filed
by the defendant Nationwide Insurance Company, and
rendered judgment thereon, and the plaintiff appealed
to this court. *Affirmed.*

*Kenneth A. Votre*, for the appellant (plaintiff).

*Rene G. Martineau* filed a brief for the appellee
(defendant Nationwide Insurance Company).

*Opinion*

PRESCOTT, J. The principal issue in this appeal is whether a company that provided automobile towing services to an insured motorist has standing as a third-party beneficiary to bring a direct breach of contract action against the insurance company that provided automobile liability coverage to the insured. We conclude, under the circumstances of this case, that the company is not an intended third-party beneficiary of the insurance contract and therefore lacks standing to bring a direct action against the insurer.

The plaintiff, Hilario's Truck Center, LLC, appeals from the judgment of the trial court granting the motion to dismiss filed by the defendant, Nationwide Insurance Company (Nationwide), as to counts one and three of the complaint. Those counts alleged breach of contract on the basis of Nationwide's refusal to pay for towing services provided to the defendant Laura Rinaldi.[1] The plaintiff claims on appeal that the court improperly granted Nationwide's motion to dismiss because the plaintiff is a third-party beneficiary to the insurance contract between Nationwide and Rinaldi and therefore has standing to bring claims directly against Nationwide for breach of contract.[2]

The following facts and procedural history, as recited by the trial court in its memorandum of decision, are relevant to the resolution of this appeal. On March 17, 2015, Rinaldi was involved in a motor vehicle accident on Route 34 in Newtown. Rinaldi's vehicle left the roadway, traveled over a rock wall, rolled over, and landed in a wooded area some distance from the road. Newtown Police responded to the scene and, shortly thereafter, requested the plaintiff's services to recover and tow Rinaldi's vehicle. Removal of the vehicle required a heavy duty wrecker and a flatbed truck. The plaintiff provided these services, as well as "a crush wrap to protect the vehicle" while it was towed from the accident scene. The plaintiff submitted invoices for its towing services to Nationwide. At the time the court issued its decision, neither defendant had paid the plaintiff for its services, and Rinaldi's vehicle was stored on the plaintiff's property.

The plaintiff commenced the underlying action against the defendants to recover for the towing and vehicle recovery expenses that it incurred as a result of Rinaldi's motor vehicle accident. The plaintiff brought a three count complaint. The first count alleges breach of an implied contract against both defendants.[3] Specifically, the plaintiff alleges that "[t]he law implies a contractual obligation to pay the cost of services rendered on the automobile owner," and that the defendants breached this implied contract by refusing to pay the plaintiff for its services.

The second count sounds in unjust enrichment

against Rinaldi. It alleges that Rinaldi "received the benefit of having the vehicle removed from the scene and towed to the plaintiff's storage facility" and continues "to enjoy the benefit of the plaintiff's recovery, towing and storage services for [her] vehicle despite not paying the plaintiff just compensation for [its] services, to the plaintiff's detriment."

The third count alleges breach of contract against Nationwide on the theory that Nationwide is liable for money damages to the plaintiff because it is a third-party beneficiary of Rinaldi's insurance contract with Nationwide. The third count incorporates by reference the allegations of the first two counts and further alleges that, despite being properly notified of the plaintiff's claims for services provided to Rinaldi, Nationwide wrongfully has refused to pay the plaintiff's invoice for those services.

In response to the complaint, Nationwide filed a motion to dismiss on the basis that the court lacked subject matter jurisdiction because the plaintiff did not have standing to bring claims directly against it. In its memorandum in support of the motion to dismiss, Nationwide claimed that the plaintiff lacked standing because it is not a party to the insurance contract between Nationwide and Rinaldi and neither party intended to assume a direct obligation to the plaintiff.[4] Additionally, Nationwide argued that the contract at issue excludes coverage for towing expenses, and, therefore, even if the plaintiff had standing to bring an action pursuant to the contract, Nationwide is not liable for the cost of the towing services rendered by the plaintiff.

The plaintiff filed an objection to the motion and a memorandum in support of the objection. Following oral argument on the motion, the court, *Truglia, J.*, granted the motion to dismiss in a written memorandum of decision. In that decision, the court concluded that the plaintiff was not a third-party beneficiary to the contract and, therefore, did not have standing to sue Nationwide for breach of the insurance contract. This appeal followed.

The plaintiff claims on appeal that the trial court improperly granted Nationwide's motion to dismiss because the plaintiff is a third-party beneficiary to the insurance contract between the defendants and, therefore, has standing to bring a direct claim against Nationwide. We disagree.

We begin by setting forth the applicable principles of law and standards of review. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is

without jurisdiction." (Internal quotation marks omitted.) *Beecher* v. *Mohegan Tribe of Indians of Connecticut*, 282 Conn. 130, 134, 918 A.2d 880 (2007); see Practice Book § 10-30 (a) (1) ("[a] motion to dismiss shall be used to assert . . . lack of jurisdiction over the subject matter").

"[L]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." (Internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 347, 977 A.2d 636 (2009). As is the case here, "if the complaint is supplemented by *undisputed facts* established by affidavits submitted in support of the motion to dismiss . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings. . . . If, however, the defendant submits either no proof to rebut the plaintiff's jurisdictional allegations . . . or only evidence that fails to call those allegations into question . . . the plaintiff need not supply counteraffidavits or other evidence to support the complaint, but may rest on the jurisdictional allegations therein." (Emphasis in original; internal quotation marks omitted.) Id, 347–48.

"The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. Practice Book § [10-30] (a). [I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (Internal quotation marks omitted.) *May* v. *Coffey*, 291 Conn. 106, 113, 967 A.2d 495 (2009). "It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *New England Pipe Corp.* v. *Northeast Corridor Foundation*, 271 Conn. 329, 335, 857 A.2d 348 (2004). "Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, our review is plenary." (Internal quotation marks omitted.) *May* v. *Coffey*, supra, 113.

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or

representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [If] a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . In addition, because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver and may be raised at any time." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Strong*, 149 Conn. App. 384, 397–98, 89 A.3d 392, cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014).

A person or entity that is not a named insured under an insurance policy and who does not qualify, at least arguably, as a third-party beneficiary, lacks standing to bring a direct action against the insurer. *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 215–18, 982 A.2d 1053 (2009); cf. *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, 266 Conn. 572, 580–81, 833 A.2d 908 (2003). "[T]he fact that a person is a foreseeable beneficiary of a contract is not sufficient for him to claim rights as a third party beneficiary." *Grigerik* v. *Sharpe*, 247 Conn. 293, 317–18, 721 A.2d 526 (1998). "Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary[5] . . . no duty to him is created." (Footnote added.) 2 Restatement (Second), Contracts § 302, comment (e) (1981).

"A third party beneficiary may enforce a contractual obligation without being in privity with the actual parties to the contract." (Footnote omitted.) *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 230, 654 A.2d 342 (1995). "Therefore, a third party beneficiary who is not a named obligee in a given contract may sue the obligor for breach." Id., 230–31. "[T]he ultimate test to be applied [in determining whether a person has a right of action as a third-party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties. . . . Although . . . it is not in all instances necessary that there be express language in the contract creating a direct obligation to the claimed third party beneficiary . . . the only way a contract could create a direct obligation between a promisor and a third party beneficiary would have to be . . . because the parties to the contract so intended." (Citation omitted; internal quotation marks omitted.) *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, supra, 266 Conn. 580–81. "[B]oth contracting parties must intend to confer enforceable rights in a third party"; (internal quotation marks omitted) id., 581; in

order to give the third party standing to bring suit. This requirement "rests, in part at least, on the policy of certainty in enforcing contracts," which entitles each party to a contract "to know the scope of his or her obligations thereunder." (Internal quotation marks omitted.) Id.

To the extent that the plaintiff's claims require us to interpret the contract between Rinaldi and Nationwide, "[c]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo." (Internal quotation marks omitted.) *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, 261 Conn. 37, 40, 801 A.2d 752 (2002). "It is the function of the court to construe the provisions of the contract of insurance. . . . The [i]nterpretation of an insurance policy . . . involves a determination of the intent of the parties as expressed by the language of the policy . . . [including] what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . [A] contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy . . . [giving the] words . . . [of the policy] their natural and ordinary meaning . . . ." (Internal quotation marks omitted.) *Hartford Casualty Ins. Co.* v. *Litchfield Mutual Fire Ins. Co.*, 274 Conn. 457, 463, 876 A.2d 1139 (2005); accord *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, 256 Conn. 343, 351–52, 773 A.2d 906 (2001). "If the terms of the [insurance] policy are clear and unambiguous, then the language from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . Under those circumstances, the policy is to be given effect according to its terms." (Citation omitted; internal quotation marks omitted.) *Taylor* v. *Mucci*, 288 Conn. 379, 384, 952 A.2d 776 (2008); see also *Hartford Casualty Ins. Co.* v. *Litchfield Mutual Fire Ins. Co.*, supra, 274 Conn. 463.

The plaintiff has failed to identify any express language in the insurance contract from which this court could conclude that Rinaldi and Nationwide intended to create a direct obligation to the plaintiff specifically. Certainly, the plaintiff is not listed as an insured and, indeed, is not referred to or mentioned at all in the contract. Moreover, the contract is devoid of any reference generally to entities like the plaintiff that might provide automobile recovery, towing and storage service to Rinaldi.[6]

The present case is unlike *Wilcox* v. *Webster Ins., Inc.*, supra, 294 Conn. 206. In *Wilcox*, the members of a limited liability company made a claim against the defendant insurer on an automobile policy and umbrella policy issued to their company for indemnification against claims arising from automobile accidents involving company vehicles. Id., 211–13. The members

directly sued the insurance company for breach of contract as a third-party beneficiary after their claim had been denied by the insurer. Id. One of the members was a specifically named insured on the automobile policy; the other was a specifically named insured on the umbrella policy, and the umbrella policy listed the company's automobile policy as an "underlying" insurance policy for the umbrella coverage. Id., 210, 218.

In *Wilcox*, our Supreme Court held that the parties arguably intended to cover the members of the limited liability company. Id., 218–19. Therefore, the members had standing to sue because they had a colorable claim that they were either named insureds or third-party beneficiaries to the contract between the limited liability company and the insurance company. Id. By contradistinction, unlike the members in *Wilcox*, the plaintiff here was not named in any part of the insurance contract and the plaintiff has not directed our attention to any language in the contract showing that the defendants, the named parties, intended to establish a direct obligation to the plaintiff.[7]

The plaintiff, in its attempt to establish that Rinaldi and Nationwide intended to assume a direct contractual obligation to it, relies upon the following language in the contract providing Rinaldi coverage for property damage: "We will pay for damages for which you are legally liable as a result of an accident arising out of the . . . use . . . of your auto. Damages must involve . . . property damage or . . . bodily injury." The insurance contract defines property damage as the "(a) destruction of tangible property; (b) damage or injury to it; and (c) loss of its use." As a factual matter, the plaintiff argues that because Rinaldi's automobile came to rest following the accident on the real property of a third person, Rinaldi incurred liability to the property owner for damage to the real property and the plaintiff mitigated Rinaldi's liability by removing the vehicle from the property and towing it away. From these facts and the language of the contract providing coverage for property damage, the plaintiff leaps to the legal conclusion that Rinaldi and Nationwide intended that Nationwide assume a direct obligation to the property owner, and by further extension, to the plaintiff itself.

We disagree with the plaintiff that the provision of liability coverage in the contract for property damage evinces an intent to create a direct obligation by Nationwide to any third person or entity, known or unknown, (1) who suffers property damage as a result of Rinaldi's use of her vehicle or (2) who, although not suffering property damage itself, expends funds on Rinaldi's behalf to mitigate property damage suffered by others. The plaintiff's assertion simply confounds the distinction between those persons or entities that might foreseeably benefit from Rinaldi's contractual receipt of liability coverage with those persons or entities to

whom both Rinaldi and Nationwide specifically intended that Nationwide would assume a direct obligation. As we previously have discussed, "the fact that a person is a foreseeable beneficiary of a contract is not sufficient for him to claim rights as a third party beneficiary." *Grigerik* v. *Sharpe*, supra, 247 Conn. 317–18; see also *Macomber* v. *Travelers Property & Casualty Corp.*, 261 Conn. 620, 642, 804 A.2d 180 (2002) (in context of settling claims, insurer owes no fiduciary duty to third-party claimant because "such a duty would interfere with the insurer's ability to act primarily for the benefit of *its* insured" [emphasis in original]). The language of the insurance contract should not be tortured to impose a direct obligation on Nationwide to the potentially astronomical number of possible persons or entities that might suffer property damage[8] resulting from Rinaldi's use of her vehicle or who might mitigate property damage suffered by others.

The plaintiff argues that denying it third-party beneficiary status undermines sound public policy, because, in the plaintiff's view, "any other rule would provide the insured with the economic incentive to allow the loss to occur, to the detriment of the insurer, quite possibly the insured, and in a fair number of cases, to the general public as well." We reject this contention.

In advancing its public policy argument about mitigation of damages, the plaintiff relies on out-of-state authority that we find to be unpersuasive. Specifically, the plaintiff cites *State Farm Mutual Automobile Ins. Co.* v. *Toro*, 127 N.J. Super. 223, 316 A.2d 745 (Law Div. 1974), and *Spurgeon* v. *Certain Underwriters at Lloyd's, London*, United States District Court, Docket No. 3:05CV100, 2008 WL 53111 (N.D.W. Va. Jan. 2, 2008), amended in part on other grounds, Docket No. 3:05CV100, 2008 WL 360562 (N.D.W. Va. Feb. 8, 2008).

In *Toro*, a declaratory judgment action was brought by an insurance company against its insured to determine whether towing and storage charges incurred following a collision were recoverable *by the insured* as consequential damages under an uninsured motorist endorsement. *State Farm Mutual Auto Ins. Co.* v. *Toro*, supra, 127 N.J. Super. 224. Although the court in *Toro* stated that costs associated with towing a motor vehicle are proximately caused by the underlying motor vehicle accident, the court did so in the context of discussing the scope of relief available to the insured in light of the policies underlying uninsured motorist coverage law.

In *Spurgeon*, a towing company that rendered services as a result of a motor vehicle accident sued the insured for towing costs. *Spurgeon* v. *Certain Underwriters at Lloyd's, London*, supra, 2008 WL 53111, *2. The insurance company refused to defend its insured in the action or to pay the charges incurred for towing. Id. The insured then sued the insurance company, which filed a motion for summary judgment on the ground that

the insurance policy did not cover towing services. Id.

The court in *Spurgeon* found that the insurance company was liable *to the insured* for the towing and storage costs because there was a provision in the insurance policy between the parties that required the insured to mitigate damages. Id., *3. ("[a] policy provision requiring the insured to protect the vehicle from harm or damage following a collision permits the insured to recover expenses of towing the vehicle to a place of safety").

We do not find these cases relevant. Both cases involve actions brought by or against the named insured under the respective insurance policies. Neither case involved the question of whether a towing company should be deemed a third-party beneficiary to an insurance contract between the automobile owner and an insurance company. Moreover, in *Spurgeon* and *Toro*, the courts' public policy conclusions relied on the fact that the named insured was seeking coverage. This reasoning does not, as the plaintiff argues, extend to "the service professionals who cleared the damage from the property."

Limiting the availability of direct breach of contract actions against insurers to those third persons or entities to whom the parties to the contract intend to create a direct obligation will not, contrary to the plaintiff's assertion, discourage third parties from mitigating property damage. If a towing company renders services after an accident, other avenues exist for the towing company to seek recovery for those services. We may presume that in many instances, the insurance company will pay for the services if the policy provides for such coverage. If there is no coverage for towing expenses, the towing company can seek recovery from the owner of the vehicle directly. Importantly, pursuant to General Statutes § 38a-321,[9] if the towing company obtains a judgment in a direct action against an insured and the insured was entitled to coverage for such a loss, the judgment creditor towing company is subrogated to the rights of the insured and may bring a direct action against the insurer to recover on the insurance policy. See *Carford* v. *Empire Fire & Marine Ins. Co.*, 94 Conn. App. 41, 46, 891 A.2d 55 (2006) ("[a] third party claimant is subrogated to the rights of the insured, and is entitled to bring an action against the insurance company, only *after* judgment [emphasis in original]").

As a third-party claimant, the plaintiff lacks standing to maintain a direct action against the insurance company. Accordingly, the trial court properly granted the Nationwide's motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Rinaldi is named as a defendant in counts one and two of the complaint. She has not participated in the present appeal. For clarity, we refer to the defendants individually by name and collectively as the defendants.

[2] We note that the court's judgment dismissing all of the counts against Nationwide constitutes an appealable final judgment, although counts one and two remain pending as to Rinaldi. Practice Book § 61-3 provides in relevant part: "A judgment disposing of only a part of a complaint, counterclaim, or cross complaint is a final judgment if that judgment disposes of all causes of action in that complaint, counterclaim, or cross complaint brought by or against a particular party or parties. . . ."

[3] In its motion to dismiss, Nationwide stated that the third count was the "sole count pending against [it]." The court, however, in its memorandum of decision, assumed that the plaintiff also asserted a claim for liability for breach of express and implied contract against Nationwide in the first count, although the allegations in count one are less than clear. Other than under the third-party beneficiary doctrine, the plaintiff has made no arguments on appeal regarding its standing to bring a direct claim against Nationwide for breach of an express or implied contract between the plaintiff and Nationwide. Therefore, any claim as to the propriety of the court's ruling with respect to count one has been abandoned by the plaintiff on appeal. *Cummings* v. *Twin Tool Mfg. Co.*, 40 Conn. App. 36, 45, 668 A.2d 1346 (1996) ("[if] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned" [internal quotation marks omitted]).

[4] Nationwide attached to its memorandum in support of the motion an uncertified, unauthenticated letter denying Rinaldi's claim for towing expenses. Nationwide also provided the certified, authenticated declaration page of the insurance contract and the insurance contract in its entirety. The plaintiff has not asserted that the court improperly relied upon these submissions.

[5] Section 302 of 2 Restatement (Second) of Contracts (1981) defines intended and incidental beneficiaries as follows:

"(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

"(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

"(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

"(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary."

[6] The contract, by its terms, excluded coverage to Rinaldi for towing services unless (1) Rinaldi paid an additional premium and (2) coverage for towing was expressly noted on the declaration page of the contract. It is undisputed that Rinaldi did not pay an additional premium for towing coverage and coverage for towing expenses is not listed on the declarations page. Even if Rinaldi had contracted for towing coverage, however, that fact would not necessarily mean that the Rinaldi and Nationwide intended to create a direct contractual obligation to any person or entity that provided towing services to Rinaldi.

[7] *Gateway Co.* v. *DiNoia*, supra, 232 Conn. 223, is also instructive. In that case, our Supreme Court concluded that the owner of a premises, The Gateway Company (Gateway), was not a named party to a contract assigning the lease for the premises from the lessee to Lena DiNoia, the sublessee, it was an intended third-party beneficiary of the assignment. Id., 225, 232. In the lease assignment contract between DiNoia and the original lessee, DiNoia assumed all of the obligations that the lessee had in his contract with Gateway. Id., 226. This included the obligation to keep the premises in "good order and repair." Id., 225. Although Gateway was not a named party to the assignment, our Supreme Court concluded that, "as a matter of law . . . the intent expressed in the plain language of the lease between DiNoia and [the original lessee] created a direct obligation from DiNoia to Gateway [so] that . . . Gateway was a third party beneficiary [lease assignment contract]." Id., 232.

[8] Indeed, the plaintiff's assertion with respect to the property damage provision of the contract could be applied equally to the provisions providing Rinaldi liability coverage for bodily injury. Thus, under the plaintiff's theory, Nationwide would have also undertaken a direct obligation to any person suffering bodily injury on account of Rinaldi's use of her vehicle and to those that provide the injured person medical treatment or rehabilitative services.

[9] General Statutes § 38a-321 provides in relevant part: "Upon the recovery

of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

———————————————————